[Civ. No. 8838.   Third Dist.   May 29, 1956.]

ROBERT G. PEARSON et al., Respondents, v. MAX BAUM et al., Appellants.

Robert W. Steel for Appellants.

Rich, Fuidge & Dawson for Respondents.

SCHOTTKY, J.—Plaintiffs commenced an action against defendants for declaratory relief to construe the meaning of certain provisions of a promissory note.

The following facts are admitted by the pleadings:

In March of 1953 respondents, the Pearsons, exchanged a ranch in Yuba County, California, for rental property of

the appellants, the Baums, in the southern part of the state. In addition to the rental property exchanged and as consideration for the ranch, appellants executed a note payable to respondents, secured by deed of trust, on the Yuba County ranch property.

The note was in the principal sum of $49,828.02, bearing 5 per cent interest from date.

The note, deed of trust and the escrow agreement covering the transaction all bear the same terms which read:

"Principal and interest payable in installments of 33⅓ per cent of net income from lease or operation of the land described in trust deed or more."

The transaction was consummated and the appellants took possession of the ranch and in early 1954 paid respondents the sum of $1,500.04 as moneys due on the 1953 installment of the note.

Accompanying the installment payment was a statement of appellants showing how the $1,500.04 was computed. (Plaintiffs' Exhibit B.)

The statement shows the income from the ranch in 1953 to be as follows:

| | |
|---|---|
| Sale of Prunes | $2,380.46 |
| Share of Crop Rent | 4,902.71 |
| | |
| Total | $7,283.17 |

The statement then claimed the following expenses as deductible from the gross income to arrive at net income:

| | |
|---|---|
| Labor | $ 74.00 |
| Spraying | 154.53 |
| Fuel Oil | 4.50 |
| Bean Cleaning and Storage | 167.90 |
| Taxes | 832.75 |
| Insurance | 16.04 |
| Depreciation on 20 acres of prunes | 1,333.33 |
| Depreciation on well and pump | 200.00 |
| | |
| Total | $2,783.05 |

The statement proceeded to subtract the listed expenses from the above income and arrived at a total income of $4,500.12 for the year 1953. Taking one-third of this, the statement arrived at the figure of $1,500.04 as the amount due on the note in the year 1953.

Plaintiffs objected to the deduction by defendants of $832.75 taxes, $16.04 liability insurance and $1,533.33 depreciation

as costs in computing the "net income," and this action for declaratory relief was filed. The trial court gave judgment for plaintiffs and concluded that the words "principal and interest payable in installments of 33⅓ per cent of the net income from lease or operation of the land" meant:

"Gross income from the operation of the land, the subject of said agreement and note, after deducting therefrom expenses necessarily incurred to produce such income. That said expenses do not include taxes or liability insurance amongst other things."

Defendants have appealed from that portion of the judgment which decrees:

"That said expenses do not include taxes.

"That plaintiffs have judgment against the defendants in the sum of $282.93 with interest thereon . . ."

Plaintiffs have not appealed, so the sole issue upon defendants' appeal is whether or not taxes on real property can be deducted from gross income in arriving at the meaning of net income under the note, deed of trust and escrow agreement in the instant case.

Appellants contend that "There is no substantial evidence to support the finding of the trial court that the cost of taxes is not deductible, under the contract of the parties, from gross income in order to ascertain net income." Appellants urge that the conversations of the parties demonstrate that they intended that taxes would be deducted. They state that the formula originally embodied in the exchange agreement, which specified a fixed maturity date for the loan and fixed annual payments, was flatly rejected by Baum at the Title Company and a week previously upon the occasion of Dr. Pearson's visit to Baum's home in Arcadia, and that on both occasions Baum specifically mentioned as objection to such a formula the possibility that there might not be enough income from the property to pay taxes; that replacement of trees in the prune orchard would be required; that he would not undertake any obligation that might put him in the position of facing foreclosure.

Respondents deny that the conversations of parties demonstrate any such agreement and a careful reading of the record reveals a substantial conflict upon the issue. It is true that appellant Mr. Baum objected to any fixed interest or principal payments but there is a conflict as to whether or not respondents agreed to any deduction of taxes from

gross income. The language "Principal and interest payable in installments of 33⅓ per cent of net income from lease or operation of the land described in deed or more" was dictated by appellant Mr. Baum, and respondents cite the portion of section 1654 of the Civil Code which reads:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; . . ."

Appellants argue also that in every day acceptance the phrase "net income" is construed to mean that which remains after expenses of an operation including taxes have been deducted from gross income. That this is true may be conceded, but the written agreement in the instant case is so unusual that it is difficult to apply ordinary rules of construction to it. As a result of an exchange of property a 280-acre farm valued at considerably in excess of $100,000 was to be conveyed to appellants subject to a note in the sum of $49,828.02 bearing 5 per cent interest and secured by a deed of trust. Appellants did not wish to be subject to fixed payments, so at their suggestion and insistence the note was to be payable "in installments of 33⅓ per cent of net income from lease or operation of the land." It must be borne in mind that the principal was approximately $50,000 and that the annual interest would be approximately $2,500.

Section 1643 of the Civil Code provides:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

Section 1655 of the Civil Code provides:

"Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention."

And section 1860 of the Code of Civil Procedure provides:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Under all of the circumstances of the instant case there is considerable force in respondents' argument that while the contract does not anticipate an early retirement, it must have

contemplated that the indebtedness would be repaid some day and $1,500 would not even meet the interest payment for the year 1953, and to agree with appellants' contention that taxes on the land could be deducted from the gross proceeds of the operation of the land would be unreasonable and unrealistic. We are inclined to agree with respondents' argument that the words "from lease or operation of the land" limits the type of deductions meant by the parties to those expenses actually incurred in the production of crops or in connection with lease operations.

The trial court was confronted with a very unusual contract and with highly conflicting testimony as to the intention of the parties. Bearing in mind the code sections hereinbefore quoted, we believe that the construction of the trial court that the language "net income from lease or operation of the land" was not intended to mean and did not mean that appellant owners of the land could deduct the taxes on the land from said "net income," was not only entirely reasonable, but is sustained by the evidence and the law.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1956.